UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CARRIE A. CARVALHO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RENEE GRZANKOWSKI, and )<br>SCOTT GRZANKOWSKI, )<br>)<br>Defendants. ) | Case No. 5:12-cv-194 |

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Doc. 36)

Pending before the court is a motion for summary judgment filed by Defendants Renee and Scott Grzankowski (collectively, "Defendants"). (Doc. 36.) In this negligence action, Plaintiff Carrie Carvalho alleges that, over the course of a weekend at Defendants' residences, she was injured as a result of Defendants' failure to exercise reasonable control over their puppy.

Defendants contend they are entitled to judgment as a matter of law because the undisputed facts reveal that their puppy exhibited neither vicious nor dangerous propensities and that they therefore lacked notice that their puppy posed a foreseeable danger to Plaintiff. Plaintiff opposes the motion for summary judgment, arguing that whether Defendants had notice that their puppy posed a source of danger to others, whether Defendants breached their duty of care, and whether that alleged breach was the proximate cause of her injuries are factual determinations for the jury.

The court heard oral argument on the pending motion on June 16, 2014. Plaintiff is represented by William A. MacIlwaine, Esq. Defendants are represented by Andrew C. Boxer, Esq.

I.  **The Undisputed Facts.**

   A.  **The Incidents Giving Rise to Plaintiff's Injuries.**

On the weekend of September 11, 2009, Defendants invited Plaintiff and her boyfriend, Rob Marchant, who both lived in Massachusetts, to their residences in Vermont. At the time, Defendants owned a camp located on Forest Lake in Woodbury, Vermont, and a primary residence in Calais, Vermont. Defendant Renee Grzankowski and Mr. Marchant are siblings.

When Defendants invited Plaintiff to visit, Defendants knew that Plaintiff's dog would accompany her, and Defendant Renee Grzankowski admits that she did not advise Plaintiff not to bring her dog. At the time, Plaintiff owned a mature Bullmastiff named "Greta," who was approximately six years old and who weighed approximately eighty to ninety pounds. Defendants owned a Labrador Retriever puppy named "Trey," who was approximately six-and-a-half months old. Prior to the weekend in question, Plaintiff had never met or spoken with Defendants, and Plaintiff and Greta had no prior contact with Trey. Plaintiff, however, knew that Defendants owned a puppy, that the puppy would be present over the weekend, and that the puppy was allowed to roam unleashed on Defendants' properties.

When Plaintiff and Mr. Marchant arrived at Defendants' camp during the evening of Friday, September 11, 2009, Plaintiff opened the back hatch of her vehicle to check on Greta. Trey "bounded" over to Plaintiff's vehicle and attempted to climb in the back with Greta, which prompted Plaintiff to attempt to push him away. (Doc. 39-1 at 5-6, ¶ 18.) Mr. Marchant assisted Plaintiff and was able to restrain Trey and prevent him from entering the vehicle. Defendant Scott Grzankowski was outside the camp as Plaintiff and Mr. Marchant arrived and saw Trey "put his paws on the bumper" of the vehicle, realized another dog was in the vehicle, and put Trey on a leash and walked him back to the camp. (Doc. 39-3 at 8.) After observing this interaction with Trey, Plaintiff was aware that Trey was an "excited" puppy; she did not, however, consider Trey's behavior "vicious" or "dangerous," and she did not think that Trey seemed "aggressive" because he was not growling or baring his teeth. (Doc. 39-1 at 4, ¶¶ 14-15; Doc. 39-6 at 4-5.) Later that

same evening, Plaintiff asked Defendant Renee Grzankowski if she or her husband could restrain Trey while she fed and walked Greta because Trey "was really excited." (Doc. 34-3 at 38.) In response, Trey was tied to Defendants' porch.

On September 12, 2009, Plaintiff asked Mr. Marchant to ask Defendant Renee Grzankowski to keep Trey inside the house while she took Greta for a walk. Mr. Marchant relayed this request to his sister. While Mr. Marchant thought that "there was already some signs of [Trey] being out of control," (Doc. 39-5 at 10), there is no evidence that he conveyed this opinion to Defendants. Thereafter, Plaintiff took Greta on a leashed walk, during which Trey, who was unleashed, approached Plaintiff and Greta. Trey did not "bite, scratch, or maul Plaintiff" and his behavior was not "directed" at Plaintiff, (Doc. 39-1 at 8, ¶ 22); however, his "mauling behavior was directed [at] Greta." *Id.* Trey jumped on Greta from behind and attempted to mount her, "bit[]" at Greta's legs, and engaged in "aggressive play" with Greta. (Doc. 39-6 at 18, 21.) Plaintiff described Trey as initially "playful" but testified that he turned "more aggressive" and was "growling." (Doc. 39-6 at 21-22.) Greta, in turn, pulled on her leash as she attempted to avoid Trey, which pulled Plaintiff's right arm across her body. Plaintiff contends this incident caused her initial injury.

As Plaintiff yelled for help, she observed Defendant Scott Grzankowski standing outside with a beer in his hand. Plaintiff does not recall which way he was facing at the time and concedes that she has "no way of knowing what [he] saw." (Doc. 39-6 at 25.) After hearing Plaintiff call for help, Mr. Marchant ran from inside the house to Plaintiff's aid and separated Trey from Greta. Plaintiff's right shoulder became sore immediately following the incident. Over the remainder of the weekend, Plaintiff did not discuss this incident with Defendants, although she asserts that Defendant Scott Grzankowski had the "opportunity" to witness the incident because he was outside as well when it occurred. (Doc. 39-1 at 8, ¶ 25.)

On September 13, 2009, Defendants were entertaining several guests at their primary residence in Calais, Vermont. Plaintiff brought Greta with her to this residence. When she first arrived, Plaintiff states that Trey "came at Greta" and was "getting in her

3

face and trying to play with her again and just was overly excited again." (Doc. 34-3 at 52.) A cousin of Mr. Marchant and Defendant Renee Grzankowski separated Trey, and Plaintiff briefly walked Greta and put her back in the vehicle.

Later that day, Plaintiff asked Defendant Renee Grzankowski to keep Trey inside while she took Greta for a leashed walk on a nearby road. After the two had walked approximately a quarter of a mile down Balentine Road, Trey approached at a "[f]ull run" and "darted straight for Greta." (Doc. 39-6 at 33-34.) During this second incident, Trey did not "bite, scratch, or maul" Plaintiff, (Doc. 39-1 at 10, ¶ 36,) but, according to Plaintiff, Trey was "harassing" and "hounding" Greta and "jumping" on her. (Doc. 39-6 at 34.) As Greta attempted to avoid Trey, Greta again pulled on her leash, which pulled on Plaintiff's right arm. Plaintiff seized Trey's collar with her left hand and walked with the two dogs back to Defendants' primary residence. As Plaintiff escorted the dogs, Greta continued to pull on her leash and Trey continued to jump towards Greta. When Plaintiff and the dogs neared Defendants' residence, Mr. Marchant came to Plaintiff's assistance and restrained Trey. Neither Defendant witnessed the second incident, which Plaintiff claims exacerbated her injuries from the previous day.

Over the course of the weekend, Plaintiff never spoke directly to Defendant Scott Grzankowski about controlling or restraining Trey. Plaintiff had two conversations with Defendant Renee Grzankowski about Trey: the first on Friday night and the second on Sunday afternoon. In each of these conversations, she asked Defendant Renee Grzankowski if Defendants would restrain Trey while she either walked or fed Greta because he was "really excited," (Doc. 39-6 at 12), but she did not otherwise complain about his conduct.

**B.   Plaintiff's Additional Evidence of Notice.**

Plaintiff points to additional and undisputed evidence which she contends establishes that Defendants had notice of Trey's dangerous propensities. She notes that Defendant Scott Grzankowski testified in deposition that Trey was "energetic" and "playful," (Doc. 39-3 at 3-4, 10), and that Trey often played with other dogs in their neighborhood, which included chasing, growling, mouthing, nipping, and "put[ting] his

4

paws" on the other dogs. *Id.* at 4. While Defendant Scott Grzankowski testified that his friends and neighbors had discussed "Trey's energetic or playful behavior" with him, he received no "complaints" about Trey. *Id.* at 10.

Plaintiff also cites an affidavit submitted by Janice Marchant, the mother of Mr. Marchant and Defendant Renee Grzankowski, wherein Ms. Marchant avers that, at the time of the incident, Trey was "a rambunctious puppy" who did not listen to commands, while Greta was a "well-behaved, trained, quiet dog."[1] (Doc. 39-4 at 3, ¶¶ 6-7.) Ms. Marchant's husband submitted an affidavit agreeing with his wife's characterizations of Trey. (Doc. 39-8 at 2, ¶ 2.)

## II.   Conclusions of Law and Analysis.

### A.   Standard of Review.

Summary judgment must be granted when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[1] Mrs. Marchant also recalled an incident following the September 2009 weekend in which another person told her that he had "bloody scratches" on his arms from Trey. (Doc. 39-4 at 4, ¶ 14.) It is undisputed this event followed the weekend in question.

(1986). "There is no material fact issue only when reasonable minds cannot differ as to the import of the evidence before the court." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993).

The court's jurisdiction over this case is based upon diversity of citizenship. The court therefore analyzes Plaintiff's claim in accordance with Vermont law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

### B. Plaintiff's Negligence Claim and Vermont Law Governing Domestic Animal Liability.

Plaintiff alleges Defendants breached a duty of care to protect her and Greta from Trey's "uncontrolled behavior." (Doc. 1 at 4.) For a claim of negligence, a plaintiff must establish: "the existence of a legally cognizable duty owed by the defendant to the plaintiff, breach of that duty, such breach [was] the proximate cause of plaintiff's injury, and actual damages." *Powers v. Office of Child Support*, 795 A.2d 1259, 1265 (Vt. 2002). "'[W]hether the law imposed upon [a defendant] a duty of care' [is] a determination the trial court must make as a matter of law." *Keegan v. Lemieux Sec. Servs., Inc.*, 2004 VT 97, ¶ 7, 177 Vt. 575, 576, 861 A.2d 1135, 1137 (2004) (quoting *Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 72 n.2 (Vt. 2001)).

Under Vermont law, foreseeability is only one factor considered in determining the existence of a legal duty. *See Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 6, 179 Vt. 250, 253-54, 892 A.2d 226, 228 ("Generally, whether there is a cognizable legal duty that supports a tort action depends on a variety of public policy considerations and relevant factors, only one of which is foreseeability."); *see also McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997) ("In tort cases, foreseeability is often confused with duty. . . . The mere fact that a consequence might foreseeably result from an action or condition does not serve to establish a duty owing from a defendant to a plaintiff.") (internal quotation marks and citations omitted). Although foreseeability is generally an issue for the jury, it may be decided as a matter of law where reasonable minds could not differ. *See Hardingham v. United Counseling Serv. of Bennington Cnty., Inc.*, 672 A.2d

6

480, 483 (Vt. 1995) (directing that where an issue is "'generally a question for the jury,' the trial court may decide the question as a matter of law 'where the minds of reasonable persons cannot differ'") (quoting *Rivard v. Roy*, 196 A.2d 497, 500 (Vt. 1963)); *see also Wilson v. Glenro, Inc.*, 2012 WL 1005007, at *9 (D. Vt. Mar. 23, 2012), *aff'd* 524 F. App'x 739 (2d Cir. 2013) (granting summary judgment on plaintiff's negligence claim because reasonable minds could not differ in concluding defendant could not foresee the potential for plaintiff's injury).

The Vermont Supreme Court has held that "the keeper of a domestic dog is not liable for injuries to persons and property unless the owner had some reason to know the animal was a probable source of danger." *Davis v. Bedell*, 194 A.2d 67, 68 (Vt. 1963); *see also Martin v. Christman*, 2014 VT 55, ¶ 16, 2014 WL 2619714 (reaffirming *Davis* and declining "to depart from long-held principles of negligence to create a new field of strict liability" for injuries caused by dogs). "Prior complaints from earlier victims are not essential to legal liability; nor is the owner immune until actual injury has been inflicted." *Davis*, 194 A.2d at 68. Rather, "liability attaches only when 'the dog's past behavior has been such as to require a person of reasonable prudence to foresee harm to the person or property of others.'" *Hillier v. Noble*, 458 A.2d 1101, 1104 (Vt. 1983) (quoting *Davis*, 194 A.2d at 68).

In Vermont, there is no "absolute liability in dogbite cases," nor may liability be imposed based on "mere *ownership* of a dog." *Id.* As the *Martin* court explained, strict liability is inappropriate because dogs are "useful," "usually harmless," and "have their rights in the absence of evidence of a vicious nature." *Martin*, 2014 VT 55, ¶ 8 (internal quotation marks and citations omitted). Correspondingly, the "risks" associated with "ordinary" canine behavior "are to a considerable extent reciprocal" since "ownership of animals such as dogs and cats is widespread throughout the public." *Martin*, 2014 VT 55, ¶ 13 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 23 cmt. b. (2010)). Vermont law thus confines domestic animal liability to circumstances where there is notice that the animal in question poses a probable source of danger beyond the animal's innate characteristics. *Compare Carr v. Case*, 380 A.2d 91,

7

93 (Vt. 1977) ("[W]hen a dog owner has reason to know that his dog might bite some person, then the duty of restraint attaches; and to omit it is negligence.") (internal quotation marks and alterations omitted); *with Zukatis by Zukatis v. Perry*, 682 A.2d 964, 967 (Vt. 1996) (concluding no breach of duty after horse kicked and injured a child who had crawled into the horse's pasture because the horse was not "aggressive").

  Defendants argue that Vermont law governing domestic animals must be considered in the context of Plaintiff's status on their properties. They contend that because Plaintiff was a social guest, they owed her only a duty to refrain from active negligence, that their failure to restrain Trey was a "passive activity" that did not constitute "active negligence," and that they had no duty to make Plaintiff's visit to their residences "more safe" by restraining Trey. (Doc. 36 at 7, 9.) After Defendants filed their motion for summary judgment, the Vermont Supreme Court reversed its existing precedent and held "that a landowner owes the same duty of care to a licensee as to an invitee." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 26, 2014 WL 3559396 (footnote omitted) (concluding further "that the standard of 'reasonable care in all the circumstances' will better reflect our common expectation of the duty of care owed by landowners and occupiers to all lawful entrants"). As a result, a lawful entrant's status as an invitee or licensee should not be "controlling" but rather should simply be "one element, among many, to be considered in determining the landowner's liability under ordinary standards of negligence." *Id.* (internal quotation marks omitted). Thus, a landowner's "duty is to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of such individuals." *Id.* (internal quotation marks omitted).

  In light of *Demag*, the dispositive issue in this case is not Plaintiff's status as a visitor to Defendants' properties, but whether Defendants exercised "reasonable care" under all the circumstances "for the safety of all such persons invited upon the[ir] premises." *Demag*, 2014 VT 78, ¶ 26 (internal quotation marks omitted). The court thus must make a threshold determination regarding whether a rational jury could find that

Defendants "had some reason to know [Trey] was a probable source of danger" to Plaintiff. *Davis*, 194 A.2d at 68.

### C. Whether Defendants Had Notice Trey Was A Probable Source of Danger to Plaintiff.

Defendants argue that Vermont law imposes liability on dog owners only if they had notice that the dog was "vicious"[2] or "dangerous." In this case, Plaintiff concedes Trey was not "vicious." (Doc. 39 at 7.) Whether Trey was nonetheless "dangerous" poses a closer question.

The Vermont Supreme Court has not addressed whether an owner of a domestic animal is liable in negligence when an owner has notice of his or her domestic animal's non-vicious propensities that are a probable source of harm. In *Dodge v. McArthur*, 223 A.2d 453 (Vt. 1966), the Vermont Supreme Court noted that the plaintiff's daughter had been knocked down by the defendants' "large dog, known to be a hazard, partly because [o]f its exuberant playfulness." *Id.* at 454 (analyzing proximate cause jury instruction in a negligence action in which the plaintiff sued a dog owner for an injury she sustained while trying to help her daughter). *Dodge* thus provides some support for a conclusion that the Vermont Supreme Court would impose liability for an animal's non-vicious propensities that created a foreseeable risk of harm to a person. Other states have

---

[2] Vermont law imposes liability where the owner knows a domestic animal is vicious. For example, in *Godeau v. Blood*, 52 Vt. 251 (1880), the Vermont Supreme Court affirmed a jury verdict in favor of a boy bitten by a shopkeeper's bull terrier, described at trial as "the most wickedest kind of a dog." *Id.* at 254 (internal quotation marks omitted). The evidence indicated that the dog was known to be "exceptionally fierce and ferocious" and that the dog had "fiercely assailed other dogs without provocation," "jumped, and fastened his teeth into the breast of a horse while being led from the stable," and was "confined and muzzled" most of the time. *Id.* at 253. The *Godeau* court concluded that there was "strong evidence that the dog was, and was known to be, vicious, and that the safety of the public required his restraint." *Id.* at 254 (internal quotation marks omitted). Similarly, in *Davis*, the defendants admitted that they were aware that their dog "harassed pedestrians at the roadside by jumping and chasing after them" and that they shut their dog in when they observed this behavior. *Davis*, 194 A.2d at 67. Residents testified that "the dog had rushed from the yard into the highway to bark, snarl and growl at travelers on foot and on bicycles, as they passed the defendants' home." *Id.* The *Davis* court concluded that the defendants "had reasonable and sufficient opportunity for knowing that their dog was a source of danger to persons passing by their premises on foot, as the plaintiff was doing at the time of her injury." *Id.* at 68.

sanctioned this approach. *See, e.g., Vendrella v. Astriab Family Ltd. P'ship*, 87 A.3d 546, 548-49 n.4, 554 (Conn. 2014) (affirming that "negligence is the foundation of an action for injuries caused by a domestic animal" and noting that "any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity") (internal quotation marks, citations, and footnotes omitted); *Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1258-59 (Ind. 2003) (concluding that an owner is liable in negligence if the owner has knowledge of the dog's "dangerous propensities"; defining dangerous propensities as "a tendency of the animal to do any act that might endanger the safety of persons or property in a given situation"; and noting that "all dogs, regardless of breed or size, are presumed to be harmless domestic animals").[3]

---

[3] The Restatement (Second) of Torts recognizes that an owner can be "subject to liability for harm done by the animal if" the owner "is negligent in failing to prevent the harm," with the "amount of care that the keeper of a domestic animal is required to exercise in its custody [being] commensurate with the character of the animal." Restatement (Second) of Torts § 518 & cmt. f.

> In determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics. . . . [An owner] is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.

Restatement (Second) of Torts § 518, cmts. g, h. Other sources are in accord and conclude that an "owner is obliged to exercise over [the animal] a certain degree of care depending upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept." 4 Am. Jur. 2d Animals § 72. The owner "is charged with knowledge of the natural propensities of animals of the particular class to which this animal belongs, and, if these propensities are of the kind that might cause injury he or she must exercise the care necessary to prevent such injuries as may be anticipated." *Id.* "Liability . . . depends upon [the] owner's negligence in failing to confine or restrain his animal or otherwise warn of its propensities, and the type, size, nature, and habits of the animal, known to the owner, are all circumstances to be taken into account in determining whether the owner was negligent." *Id.*; *see also* 3B C.J.S. Animals § 355 ("An owner or keeper of a dog who fails to exercise reasonable care may be liable in negligence for the manner of keeping and controlling the dog, proximately resulting in reasonably foreseeable injury, as may be measured by whether

Predicting that the Vermont Supreme Court would impose liability for injuries caused by a non-vicious dog if the dog's owner had notice that the dog posed a probable source of danger to humans, the question becomes whether Plaintiff has sustained her burden of establishing that Defendants had notice that Trey posed a probable source of danger *to her*. When examined in the light most favorable to Plaintiff, the evidence supports a conclusion that Defendants knew that Trey was an energetic and excitable puppy, especially around other dogs, and that he had a tendency to play with other dogs by chasing, growling, mouthing, nipping, and "put[ting] his paws" on them. (Doc. 39-3 at 4.) Plaintiff, herself, noticed these innately puppy-like characteristics in Trey almost immediately. In turn, Plaintiff's dog, Greta, while mature and well-trained, predictably strained at her leash in response to Trey's overtures. When Greta did so, Plaintiff's injuries resulted. At best, the evidence thus reveals that Trey posed a potentially dangerous risk of harm *to other dogs*, and that Plaintiff's injuries were incurred when her own dog responded to that threat. There is no evidence that Defendants had notice that Trey posed a danger of harm to Plaintiff. Rather, because she was holding Greta's leash, Plaintiff suffered the adverse consequences of her dog's response to Defendants' puppy. Although it might be foreseeable that Plaintiff would be holding the leash to her dog at the time, imposition of liability for typical dog-to-dog behavior not directed at humans would be akin to strict liability in the circumstances of this case. Plaintiff cites no precedent for this approach, and the limited precedent the court has found declines to impose liability based on a dog's "normal canine behavior." *See, e.g., Collier v. Zambito*, 807 N.E.2d 254, 256 (N.Y. 2004) (affirming grant of summary judgment when there "was no evidence that the dog's behavior was ever threatening or menacing" but rather, "the dog's actions—barking and running around—[were] consistent with normal canine behavior. Barking and running around are what dogs do."); *Plowman v. Pratt*, 684 N.W.2d 28, 32 (Neb. 2004) (affirming grant of summary judgment for defendant and concluding that "[n]ormal canine behavior, such as a dog barking at a stranger, is not

---

the owner or keeper has knowledge or notice of the dog's vicious propensities.") (footnotes omitted).

sufficient to infer that a [defendant] has actual knowledge of a dog's dangerous propensities").

Because the Vermont Supreme Court has "explicitly rule[d] out tort recovery against dog owners based on theories of strict or absolute liability," *Martin*, 2014 VT 55, ¶ 8, and because "Vermont law has long required proof of an owner's negligence to establish liability for injuries caused by dog[s]," *id.* at ¶ 7, Defendants had no duty to protect Plaintiff from Trey's behavior because they had no notice that Trey's behavior posed a probable source of danger to *Plaintiff*, rather than to her dog. Defendants have therefore demonstrated that they are entitled to judgment as a matter of law on Plaintiff's negligence claim. *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The court does not reach Defendants' further argument that Plaintiff is unable to establish that Trey's behavior was a proximate cause of her injuries.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment. (Doc. 36.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this <u>6th</u> day of August, 2014.

*/s/ Christina Reiss*
_____
Christina Reiss, Chief Judge
United States District Court